IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY A. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:15-cv-02312-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Mary A. Jones, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Jones timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Jones was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 54.) She has a high school education. (Tr. at 61.) Her past work experiences include employment as a cashier and as a fast food

worker. (*Id.*) Ms. Jones claims that she became disabled on June 10, 2010, due to hypertension, asthma, and a history of polysubstance abuse, along with depression, anxiety, and an alleged attention span "like a three year old." (Tr. at 271, 274-75, 297, 255-56.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI or DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination

of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Jones met the insured status requirements of the Social Security Act through September 30, 2015. (Tr. at 54.) The ALJ further determined that Ms. Jones has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Ms. Jones's hypertension, asthma, depression, anxiety, and a history of polysubstance abuse, in remission, are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 56.) The ALJ determined that Ms. Jones has the following RFC: light work as defined in 20 C.F.R. §§ 404.1567(b) and

4

416.967(b), except that Ms. Jones may never climb ropes, ladders, or scaffolds, and she should perform no more than occasional stooping, kneeling, crouching, or crawling; any work must not involve excessive vibration or workplace hazards, such as moving machinery or unprotected heights, she should not bear concentrated exposure to excessive humidity or pulmonary irritants, such as chemicals, dust, fumes, odors, gases, or poor ventilation; the work must be limited to simple, routine, and repetitive tasks and decisions while providing no more than occasional interaction with co-workers, supervisors, and the public; and she must face no more than occasional, gradually introduced changes in workplace environment or routine. (Tr. at 58.)

According to the ALJ, Ms. Jones is unable to perform any of her past relevant work. (Tr. at 61.) She is a "younger individual aged 18-49" and has "at least a high school education," as those terms are defined by the regulations. (*Id.*) The ALJ determined that "transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) Considering Ms. Jones's age, education, work experience, and RFC, and based on testimony from a vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Ms. Jones can perform, such as a garment sorter, a hand finisher, and a garment folder. (Tr. at 61-62.) The ALJ concluded her

findings by stating that Ms. Jones "has not been under a disability, as defined in the Social Security Act, from June 10, 2010, through the date of this decision." (Tr. at 62.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the Commissioner's decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Jones alleges that the ALJ's decision should be reversed and remanded because the ALJ erred in giving minimal weight to the opinion of one-time consultative examining physician, David W. Hodo, M.D.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the

nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . .." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20

C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of doctor who conducted a single examination and who was not a treating doctor). Importantly, however, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Substantial evidence supports the ALJ's decision to afford minimal weight to Dr. Hodo's findings. Dr. Hodo saw Ms. Jones in August 2013 for a consultative examination, reporting evidence of post-traumatic stress, panic disorders, and depression, and assigning "marked" or "extreme" restrictions upon Plaintiff in multiple functional areas. (Tr. at 55, 585-88.) Dr. Hodo noted:

> [T]he patient is a pleasant, but sad looking woman who appears to be her stated age. She cried in telling her story, and seemed distraught at times. Her mood was of significant depression. She had a flat affect, and a soft voice. Her thoughts were logical at times, and illogical at times. She seemed to have trouble concentrating. She seemed truthful, and forthcoming. She has symptoms of anxiety, panic, acrophobia, obsessive thinking, and past suicidal thoughts. She also describes having been violent, and cutting her boyfriend with a knife. She has

9

emotional lability. She has trouble controlling her impulses. She hallucinates. Her sensorium was intact. She had trouble concentrating. She had difficulty with simple facts. She did not know who the governor of Alabama was. She had problems with proverb testing, and this seems to have to do with concentration problems and not memory loss.

(Tr. at 586.)

As the ALJ explained, "Dr. Hodo's report depicts an entirely different and much more severe mental condition for Ms. Jones than established throughout the remaining record." (Tr. at 59.) As is explained below, the other medical evidence in the record, including treatment notes from Dr. Gary Walton, Plaintiff's primary care physician for her physical ailments since January 2009; treatment notes from mental health counselors at West Alabama Mental Health Center ("WAMH") from April 2010 through July 2013; the findings of Donald Blanton, Ph.D., who performed a consultative mental status examination on Plaintiff in December 2012; and finally the report of Laili Markert, Ph.D., a non-examining medical expert, are each inconsistent with the extreme mental status limitations opined by Dr. Hodo. Additionally, Plaintiff's self-reported activities of daily living undermine Dr. Hodo's opinions.

First, treatment notes from Dr. Walton for Plaintiff's physical complaints rarely showed any psychiatric complaints and consistently showed intact memory as well as normal orientation, insight, judgment, mood, and affect. (Tr. at 57, 474-

75, 477-78, 481, 484, 572-73, 576-77, 581). In fact, in July 2010, just one month after Plaintiff's alleged onset date, Dr. Walton considered her depression "stable." (Tr. at 474.)

Second, Plaintiff's mental health treatment notes from WAMH from April 2010 through July 2013 showed findings generally consistent with no more than mild to moderate functional limitations and only conservative treatment with medication. (Tr. at 55, 57-59). As the ALJ noted, she received merely outpatient counseling for her mental conditions at WAMH. (Tr. at 57, 360-75, 388-425, 521-69). In the visits to WAMH that involved mental status testing, Plaintiff consistently had normal orientation, no abnormal thoughts or perceptual disturbances, normal motor activity, fair or good sleep and appetite, and no findings of poor judgment, insight, or memory. (Tr. at 59, 362, 365, 368, 370, 372, 388-96, 398, 401, 404, 406, 409, 411, 413, 414-25, 526, 530, 534, 539, 542, 543-48, 552, 559). Her counselors there assessed Global Assessment of Functioning ("GAF") scores between 55 and 70, signifying mild to moderate social and occupational implications. (Tr. at 362, 373.)

Plaintiff argues that the ALJ shouldn't have considered her treatment by the WAMH counselors because they are not "acceptable medical sources" under the regulations. Under the regulations, "medical sources" fall into two categories:

"acceptable medical sources" or "other health care providers who are not acceptable medical sources." Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *1-2. Only the former can provide medical opinions to the Administration and can be considered treating sources. *Id.* at *2. "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.* at *1. Medical sources who are not "acceptable medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. *Id.* at *2. Assuming the WAMH counselors are not "acceptable medical sources," Plaintiff's argument that the ALJ should not have considered them fails because:

> [d]epending on the particular facts in a case, and after applying the factors of weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1).

Plaintiff also takes issue with the fact that the ALJ stated in a footnote that Dr. Hodo lacked mental health care credentials "in comparison to" Plaintiff's treating sources at WAMH, apparently inadvertently overlooking Dr. Hodo's letterhead describing his practice as "Psychiatry and General Practice." (Tr. at 57 n.3, 585). Plaintiff apparently asserts that Dr. Hodo's specialization in psychiatry, standing alone, should have led the ALJ to give greater weight to Dr. Hodo's opinion than the opinions from Plaintiff's other examining and treating sources. However, specialization is only one factor in considering an opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Other factors, such as supportability and consistency, may justify giving more weight to another opinion over a specialist's opinion that is not supported by or is inconsistent with the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p, 1996 WL 374188, at *2. Given the ALJ's determination that Dr. Hodo's opinion was inconsistent with the medical evidence, the ALJ's misstatement in a footnote regarding Dr. Hodo's mental health credentials is harmless error. Plaintiff failed to show she was prejudiced by the ALJ's footnote, and remand to have the ALJ acknowledge Dr. Hodo's psychiatry specialization where the record still shows his opinion was inconsistent with the other record evidence as a whole would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. *See, e.g.,*

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

Third, Plaintiff's consultative mental status examination with Dr. Blanton in December 2012 also showed logical thoughts, intact associations, flat but appropriate affect, and no confusion, despite Plaintiff's reports of anxiety and depressed mood. (Tr. at 381-82). Plaintiff had below average intelligence and memory "consistent" with her intellect, but also was alert and oriented, could do simple calculations, had concrete interpretations of similarities and proverbs, had limited insight but good judgment, and had some recall. (Tr. at 57, 382).

Plaintiff suggests that the ALJ should have given greater weight to Dr. Hodo's opinion because it was actually consistent with Dr. Blanton's opinion following his consultative mental status examination. Yet the ALJ acknowledged the consistency between these opinions, noting that both Dr. Blanton and Dr. Hodo had assessed serious, marked, or extreme limitations. (Tr. at 57, 378-79, 587-88). However, as with Dr. Hodo's opinion, the ALJ determined the serious limitations Dr. Blanton had also assessed were not consistent with the conservative mental health treatment Plaintiff received and the generally unremarkable mental status findings reflected in the record evidence, including Dr. Blanton's own exam. (Tr.

at 57, 360-75, 381-82, 388-425, 474-75, 477-78, 481, 484, 521-69, 572-73, 576-77, 581).

Fourth, Dr. Markert reviewed the evidence of record and opined in March 2012 that Plaintiff could handle simple instructions, routine tasks, casual contact, and non-confrontational criticism. (Tr. at 129-30). The ALJ concurred with this opinion, finding it consistent with the evidence, including from Dr. Walton and from the WAMH counselors, that Plaintiff was generally able to maintain a stable mental state with minimal conservative intervention. (Tr. at 55, 57-58). Additionally, non-examining medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p.

Plaintiff argues that the ALJ could not give greater weight to Dr. Markert's opinion over Dr. Hodo's opinion because Dr. Markert was a non-examining reviewing physician. However, opinions of non-examining sources may override opinions from treating or examining sources, provided evidence in the record supports the non-examining source's opinion. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e).

Plaintiff also appears to suggest the ALJ could not give greater weight to Dr. Markert's opinion because she was not able to review the medical evidence submitted after her March 2012 review. However, the ALJ's decision shows she reached similar conclusions as Dr. Markert regarding Plaintiff's mental limitations based on a consideration of all the relevant evidence, including Plaintiff's more recent medical records and the other evidence submitted after Dr. Markert issued his opinion. (Tr. at 55, 57, 59-60). *See* SSR 96-6p, 1996 WL 374180 (noting that an ALJ should weigh opinions from state agency medical consultants based on their supportability with the other evidence, including the evidence that the ALJ receives that was not before the state agency). Accordingly, the ALJ concurred with Dr. Markert's opinion not only because the evidence Dr. Markert reviewed in March 2012 supported her opinion, but also because the record as a whole, including Plaintiff's records dated from 2012 through 2013, supported the limitations in Dr. Markert's opinion.

Finally, the ALJ additionally noted Plaintiff's own reports regarding her daily activities were inconsistent with any suggestions that she had severe limitations in mental functioning. (Tr. at 59-60). As the ALJ discussed, Plaintiff reported that she was capable of handling her personal care, cooking, housecleaning, and paying bills. (Tr. at 59, 270-72). The ALJ further observed that Plaintiff reported attending

church, spending time with her children, mother, and sister, getting along with family, friends, and neighbors, and interacting well with authority figures. (Tr. at 59, 83, 86, 273-75). Plaintiff additionally reported that she stopped working at her most recent job as a cashier because the grocery store closed, not because of an inability to perform the job. (Tr. at 60, 255-56).

As demonstrated above, substantial evidence supports the ALJ's consideration of Dr. Hodo's opinion.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Jones's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 27, 2019.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704